1
2
3          **O**
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11
12  JOSE DE NAVA NUNEZ,              )    Case No. CV 14-68-KK
13              Plaintiff,           )
                                     )    MEMORANDUM AND ORDER
14          v.                       )
                                     )
15  CAROLYN W. COLVIN, Acting        )
    Commissioner of Social Security, )
16                                   )
17              Defendant.           )
   _____ )

18
19        Plaintiff Jose De Nava Nunez seeks review of the final decision of the
20  Commissioner of the Social Security Administration ("Commissioner" or "Agency")
21  denying his application for Title II Disability Insurance Benefits ("DIB").  The parties
22  have consented to the jurisdiction of the undersigned United States Magistrate Judge,
23  pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, the Commissioner's
24  decision is reversed and this action is remanded for further proceedings consistent with
25  this Order.
26
27
28

                                     1

# I.

## PROCEDURAL HISTORY

On January 5, 2011, Plaintiff filed an application for DIB.[1]  Administrative Record ("AR") at 218.  On August 18, 2011, the Agency denied the application.  Id. at 133.  On December 12, 2011, after reconsideration, the Agency affirmed the denial of the application.  Id. at 145.

On February 13, 2012, Plaintiff requested a hearing before an ALJ.  Id. at 159-60.  On June 19, 2012, a hearing was held before ALJ Gail Reich.  Id. at 90.  On August 6, 2012, the ALJ issued a decision denying Plaintiff's application.  Id. at 37.

On September 12, 2012, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision.  Id. at 18.  On November 20, 2013, the Appeals Council denied Plaintiff's request for review.  Id. at 1.

On January 24, 2014, Plaintiff filed the instant action.  This matter is before the Court on the parties' Joint Stipulation ("JS"), filed September 10, 2014, which the Court has taken under submission without oral argument.

# II.

## RELEVANT FACTUAL BACKGROUND

Plaintiff was born on October 19, 1967, and his alleged disability onset date is February 23, 2007.  AR at 218-19.  Plaintiff alleges disability based upon numerous impairments, including degenerative disc disease of the cervical and lumbar spines; a history of gastritis; knee, sleep, and visual disorders; depression; and anxiety.  Id. at 30-

---

[1] Plaintiff previously applied for DIB on November 27, 2007.  Administrative Record ("AR") at 109.  That application was denied on March 25, 2010, and is not under review in this action.  Id. at 117.  In addition, on January 6, 2011, Plaintiff filed an application for Title XVI Supplemental Security Income ("SSI").  Id. at 225.  However, the Administrative Law Judge ("ALJ") only analyzed his eligibility for DIB, not SSI.  See id. at 28.  Plaintiff does not challenge the ALJ's failure to analyze his eligibility for SSI.

31. He was 39 years old at the time of the onset date, and 44 years old at the time of the hearing before the ALJ.

Plaintiff attended school in Mexico until the eighth grade. Id. at 94. He last worked in 2007, delivering furniture. Id.

**A.      Opinion of Dr. Thomas Curtis**

Plaintiff saw Dr. Thomas Curtis, a psychiatrist, multiple times between January 2008 and October 2011. See id. at 337-414, 516-35. At many of the sessions, Dr. Curtis found that Plaintiff exhibited "visible anxiety," "emotional withdrawal," "depressed expressions," "ventilation of distress," "rapid speech," fear, insecurity, and worry. See id. Plaintiff received medication from Dr. Curtis for anxiety, insomnia, and depression. Id. at 764.

Early on in Plaintiff's treatment, on January 2, 2008, Dr. Curtis performed psychological testing on Plaintiff, in collaboration with Dr. Leine M. Delker and Dr. William W. Kaiser. Id. at 401. On January 9, 2008, Dr. Curtis issued a report, based upon the testing, diagnosing Plaintiff with a "depressive disorder not otherwise specified with anxiety." Id. at 408. According to the report, overall, Plaintiff's "psychological test results were highly abnormal." Id. at 406. The report stated that Plaintiff was "too beset by pain and disability, and too depressed, anxious, confused, and overwhelmed to work at this time." Id. at 409. It stated Plaintiff's "speech was slow, confused and distressed, particularly when describing how he is afraid he will not be able to work like before." Id. at 405. It further stated that Plaintiff "demonstrated diminished cognitive functioning" and revealed "defects in concentration, attention, and short-term memory." Id.

**B.      Opinion of Dr. Jarvis B. Ngati**

On July 25, 2011, Plaintiff received a complete psychiatric evaluation by Dr. Jarvis B. Ngati, at the request of the Agency. Id. at 476. Dr. Ngati diagnosed Plaintiff

with "[d]epressive disorder, not otherwise specified," and gave him a global assessment of functioning ("GAF") score of 60.[2]  Id. at 479.  Dr. Ngati's prognosis for Plaintiff was "[f]air."  Id.  He stated:  "From a psychiatric standpoint, this claimant's overall symptoms can be expected to continue to improve and within the next 12 months . . . will most likely improve."  Id.

Dr. Ngati found Plaintiff's ability to perform simple and repetitive tasks was not limited; his ability to perform detailed and complex tasks was mildly limited; his ability to relate and interact with coworkers and the public was moderately limited by his anxiety and depressive symptom complaints; his ability to accept instructions from supervisors was not limited; his ability to maintain concentration, attention, persistence, and pace was mildly limited; his ability to perform activities without special or additional supervision was mildly limited; and his ability to deal with the usual stressors encountered in the workplace, maintain regular attendance, and complete a normal workday or workweek was mildly limited.  Id.

## C.    Plaintiff's Pre-Hearing Allegations

In an Exertion Questionnaire completed on February 8, 2011, Plaintiff wrote that his back and neck pain "prevent[] me from doing a lot since I get tired fast and feel discomfort, and the medication that I drink gets me dizzy and sleepy."  Id. at 271.

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (citation and internal quotation marks omitted).  It takes into account impairment in functioning due to mental illness, not impairment "due to physical (or environmental) limitations."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 34 (4th ed. 2000 (Text Revision)).  GAF scores range from 0 (lowest-functioning) to 100 (highest-functioning).  Id.  A score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

4

Plaintiff wrote that he does not climb stairs; he can carry a bag with a gallon of milk; he does his own grocery shopping every weekend; he cleans his own home or living area, but it takes an hour and he has "to stop and take breaks"; he is able to drive a manual car for 30 minutes at a time; he does not work on cars; he rakes the leaves in his yard; he does chores but has to stop "because of pain and discomfort"; he has difficulty finishing housework; he sleeps "4 to 5 hours nightly"; and he must rest for half an hour after taking his medication. Id. at 271-73. Plaintiff further stated his condition has gotten worse, and he listed eight medications that he takes. Id. at 273.

**D.      ALJ Hearing**

On March 21, 2012, a hearing was held before ALJ Reich. Id. at 92. Plaintiff testified in person with the assistance of counsel and an interpreter. Id. A vocational expert ("VE") and two non-examining medical experts also testified. Id. The first medical expert was Dr. Thomas Maxwell, a specialist in internal medicine. Id. The second medical expert was Dr. Glen Griffin, a specialist in clinical psychology. Id.

**1.      Plaintiff's Testimony**

Plaintiff testified that he survived on income from worker's compensation and from recycling aluminum collected at home. Id. at 95. Plaintiff said he lived in a house with his sister and her family. Id. When asked what keeps him from working, Plaintiff answered, "The pain in my neck and in my back and my knees." Id. at 96.

**2.      Dr. Maxwell's Testimony**

Dr. Maxwell testified that, based on the record, Plaintiff's medical problems include degenerative disc and joint disease of the cervical spine; degenerative disc and joint disease of the lumbosacral spine; and a history of gastritis. Id. Dr. Maxwell testified that Plaintiff had no additional impairments. Id. at 96. When asked whether Plaintiff's gastritis "may have been stress induced," he answered, "That's a possibility."

Id. at 100.

### 3.    Dr. Griffin's Testimony

Dr. Griffin testified that Plaintiff suffered from an unspecified depressive disorder and a generalized anxiety disorder. Id. at 97.  He said these impairments did not meet or equal any of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id.  When asked what limitations these impairments would create, Dr. Griffin answered that Plaintiff "would have no restrictions in activities of daily living; some mild difficulty in social functioning; some mild difficulty in concentration, persistence and pace; [and] no episodes of decompensation." Id. at 98.  He further stated:  "In terms of work related activity, I believe the claimant would be . . . unrestricted in terms of the cognitive demands of work and would be able to interact with peers, co-workers, supervisors and the general public all on a frequent basis." Id.

### 4.    Vocational Expert's Testimony

The VE testified that a hypothetical individual with the limitations Dr. Maxwell and Dr. Griffin identified would not be able to do Plaintiff's past relevant work as a furniture mover and driver. Id.  However, the VE testified, such an individual would be able to do a number of other jobs, including:  assembler of plastic hospital products, bakery worker on a conveyor line, or lens-molding equipment operator. Id. at 99. Plaintiff's counsel asked the VE whether "a hypothetical claimant who is likely to be off task up to two hours per an eight-hour workday" would be employable. Id. at 101.  The VE answered, "No." Id.

### III.
### STANDARD FOR EVALUATING DISABILITY

In order to qualify for DIB or SSI, a claimant must demonstrate a medically determinable physical or mental impairment that (1) prevents him from engaging in

6

substantial gainful activity and (2) is expected to result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)     Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.[3]

(3)     Does the claimant's impairment meet or equal one of the specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[4]

---

[3] In evaluating whether a mental impairment is severe, the ALJ must rate the degree of functional loss resulting from the impairment, in four areas, collectively known as "paragraph B" criteria:  (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); <u>see also</u> <u>Maier v. Comm'r of Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998).  The Agency's regulations state:  "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

[4] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]."  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)).  In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006).  This involves, <i>inter alia</i>, evaluating the credibility of a claimant's testimony regarding his capabilities.

(4)    Is the claimant capable of performing work he has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)    Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.    Step One**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since February 23, 2007, the alleged onset date" of disability.  AR at 30 (citations omitted).

**B.    Step Two**

At step two, the ALJ found Plaintiff "has the following severe impairments: degenerative disc disease of the cervical and lumbar spines and history of gastritis."  Id.

Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012).

8

(citation omitted).

In addition, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Id. at 31.  Relying entirely on Plaintiff's Exertion Questionnaire and Dr. Ngati's report, the ALJ found Plaintiff's mental impairments cause no more than "mild" limitation in the first three areas of the "paragraph B" criteria. Id.; see also supra n.3.  The ALJ also found Plaintiff had "experienced no episodes of decompensation which have been of extended duration." AR at 31.  Thus, the ALJ found Plaintiff's mental impairments were nonsevere. Id.

## C.    Step Three

The ALJ found Plaintiff did not have an impairment that meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 32.

## D.    RFC Determination

The ALJ found Plaintiff "has the residual functional capacity to perform within a reduced range of the much reduced level of light work," with certain limitations. Id. at 32.  In evaluating any effects Plaintiff's mental impairments had, the ALJ stated:

> The claimant had treated with psychiatrist, Thomas Curtis, M.D., from January 29, 2010[,] through October 7, 2011.  The visits to Dr. Curtis consisted solely of medication refills with no objective findings.  Exhibits B2F and B7F.
>
> The claimant saw consultative examining psychiatrist, Jarvis Ngati, M.D., on July 25, 2011. . . .  Dr. Ngati diagnosed the claimant with a depressive disorder, NOS.  The claimant was found to have a global assessment of functioning of 60, which is almost at the beginning of

9

mild symptoms.  Dr. Ngati opined the claimant's ability to perform
basic mental work-related activities was either not limited or mildly
limited, with the exception of his ability to relate and interact with
coworkers and the public, which was found to be moderately limited.
Exhibit B5F.  The opinions of Dr. Ngati are entitled to considerable
weight with the exception of the moderate limitations in his ability to
relate and interact with coworkers and the public, which is
unsupported by the evidence.  The claimant gave no indication
regarding problems relating and interacting with others, and indicated
his relationships with family and friends was good.

. . .

There are no objective findings as to the claimant's complaints of
depression and anxiety.  His treatment by Dr. Curtis involved only
medication management, with no record of clinical and diagnostic
findings.  The only objective findings in the record of the claimant's
mental impairments are found in the report by Dr. Ngati.  Based on
this report and other evidence of record, Dr. Griffin testified the
claimant had no restriction of activities of daily living and mild
difficulties in social functioning and deficiencies in concentration,
persistence or pace.  There were no episodes of decompensation.  Dr.
Griffin opined the claimant could interact with others on a frequent
basis.  These opinions are also consistent with the evidence of record.

Id. at 34-36.

**E.    Step Four**

At step four, the ALJ found Plaintiff was unable to perform his past relevant work

10

as a furniture mover.  Id. at 36.

**F.      Step Five**

The ALJ found Plaintiff could do various kinds of light work, including lens molding and plastic assembly.  Id. at 37.  The ALJ noted that Plaintiff's "counsel posited to the vocational expert whether . . . being off task two hours a day would preclude" such jobs, and that the VE "responded in the affirmative."  Id.  The ALJ then stated: "However, and as Dr. Griffin testified, there is no support for such limitations in the record."  Id.

# V.

## DISPUTED ISSUES

The following issues are in dispute:

1.      Whether the ALJ erred in employing a "reverse hierarchy" in the evaluation of the medical evidence within Plaintiff's file.  JS at 2.

2.      Whether the ALJ erred in the assessment of Plaintiff's RFC.  Id.

The Court finds the first issue dispositive of this matter, and thus does not address the second issue.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[T]his Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

# VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  This Court "may set aside a denial of benefits if it is not

11

1  supported by substantial evidence or it is based on legal error." Pinto v. Massanari, 249

2  F.3d 840, 844 (9th Cir. 2001) (citation and internal quotation marks omitted).

3       "Substantial evidence" is evidence a reasonable person might accept as adequate

4  to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It

5  is more than a scintilla but less than a preponderance. Id. To determine whether

6  substantial evidence supports a finding, the reviewing court "must review the

7  administrative record as a whole, weighing both the evidence that supports and the

8  evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157

9  F.3d 715, 720 (9th Cir. 1998); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir.

10 2012) (stating that a reviewing court "may not affirm simply by isolating a specific

11 quantum of supporting evidence") (citations and internal quotation marks omitted). "If

12 the evidence can reasonably support either affirming or reversing," the reviewing court

13 "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at

14 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the

15 evidence is susceptible to more than one rational interpretation, we must uphold the

16 ALJ's findings if they are supported by inferences reasonably drawn from the record.").

17      The Court may review only the reasons stated by the ALJ in his decision "and may

18 not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d

19 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if

20 it is "clear from the record" that the error was "inconsequential to the ultimate

21 nondisability determination." Robbins, 466 F.3d at 885 (citation and internal quotation

22 marks omitted).

23

24

25

26

27

28

# VII.

## DISCUSSION

**A.   The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting Dr. Curtis's Opinion.**

### 1.   Legal Standard

An ALJ "must consider all medical opinion evidence," and is responsible for "resolving conflicts in medical testimony." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Cases in this circuit distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (footnote omitted).  Generally, the opinion of a treating physician is entitled to greater weight than the opinion of an examining physician, and the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician.  <u>Id.</u>

Where a treating or examining doctor's opinion is not contradicted by another doctor, "it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." <u>Orn</u>, 495 F.3d at 632 (citation and internal quotation marks omitted).  However, where a treating or examining doctor's opinion is contradicted, the ALJ may reject the opinion if he provides "specific and legitimate reasons supported by substantial evidence in the record."  <u>Id.</u> (citations and internal quotation marks omitted).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  <u>Id.</u> (citation and internal quotation marks omitted).  "[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it." <u>Lingenfelter</u>, 504 F.3d at 1038 n.10 (citation omitted); <u>see also Kelly v. Astrue</u>, 471 Fed. App'x 674, 676 (9th Cir. 2012) ("The ALJ erred in silently disregarding the medical opinions of [Plaintiff's] treating

13

1    psychiatrist . . . related to [Plaintiff's] ability to function in a work setting.").

2

3         **2.    Application**

4         At step two and in assessing Plaintiff's RFC, the ALJ ignored treating psychiatrist

5    Dr. Curtis's opinion and relied heavily upon consultative examiner Dr. Ngati's opinion.

6    See AR at 31, 34-36.  Thus, the ALJ implicitly rejected Dr. Curtis's opinion.  See Smith

7    ex rel. Enge v. Massanari, 139 F. Supp. 2d 1128, 1133 (C.D. Cal. 2001).

8         The parties assume, and the Court accepts, that Dr. Curtis's report contradicted Dr.

9    Ngati's report, notwithstanding the amount of time that passed in between them.  See JS

10   at 3-4, 17.  According to Dr. Curtis's January 2008 report, Plaintiff's psychological test

11   results were "highly abnormal," and Plaintiff was "too depressed, anxious, confused, and

12   overwhelmed to work at this time."  AR at 406, 409.  However, according to Dr. Ngati's

13   July 2011 report, Plaintiff had only mild limitations, for the most part.  Id. at 479.

14   Because Dr. Curtis's opinion was contradicted, the ALJ was permitted to reject it if she

15   provided specific and legitimate reasons supported by substantial evidence in the record.

16   Orn, 495 F.3d at 632.

17        The ALJ failed to provide specific and legitimate reasons.  The ALJ appears to

18   have rejected Dr. Curtis's findings because she was unaware Dr. Curtis had made

19   findings.  The ALJ stated:  "The only objective findings in the record of the claimant's

20   mental impairments are found in the report by Dr. Ngati."  AR at 36.  According to the

21   ALJ, Plaintiff's "visits to Dr. Curtis consisted solely of medication refills with no

22   objective findings."  Id. at 34; see also id. at 36 ("[Plaintiff's] treatment by Dr. Curtis

23   involved only medication management, with no record of clinical and diagnostic

24   findings.").  The ALJ made no mention of Dr. Curtis's January 2008 report, which

25   contained various objective clinical and diagnostic findings.[5]  See id. at 401-14.  Thus,

26

27        [5] Indeed, the ALJ did not realize that Plaintiff was seeing Dr. Curtis in January 2008.

28   The ALJ incorrectly stated that Plaintiff's treatment with Dr. Curtis began on January 29,

                                          14

1  the ALJ avoided providing specific and legitimate reasons for rejecting Dr. Curtis's

2  opinion "simply by not mentioning" his opinion.  <u>Lingenfelter</u>, 504 F.3d at 1038 n.10;

3  <u>see also</u> <u>Kelly</u>, 471 Fed. App'x at 676.  Under <u>Lingenfelter</u>, the ALJ's failure to mention

4  Dr. Curtis's opinion before making findings contrary to it was erroneous.

5

6  **VIII.**

7  **<u>RELIEF</u>**

8  **A.   Legal Standard**

9        "When an ALJ's denial of benefits is not supported by the record, the proper

10  course, except in rare circumstances, is to remand to the agency for additional

11  investigation or explanation."  <u>Hill</u>, 698 F.3d at 1162 (citation and internal quotation

12  marks omitted).  "We may exercise our discretion and direct an award of benefits where

13  no useful purpose would be served by further administrative proceedings and the record

14  has been thoroughly developed."  <u>Id.</u> (citation and internal quotation marks omitted).

15  "Remand for further proceedings is appropriate where there are outstanding issues that

16  must be resolved before a determination can be made, and it is not clear from the record

17  that the ALJ would be required to find the claimant disabled if all the evidence were

18  properly evaluated."  <u>Id.</u> (citations omitted); <u>see also</u> <u>Reddick</u>, 157 F.3d at 729 ("We do

19  not remand this case for further proceedings because it is clear from the administrative

20  record that Claimant is entitled to benefits.").

21        In cases where an ALJ has improperly rejected "claimant testimony or medical

22  opinion," a court must remand to the ALJ "with instructions to calculate and award

23  benefits" if (1) "the record has been fully developed and further administrative

24  proceedings would serve no useful purpose"; (2) "the ALJ has failed to provide legally

25  sufficient reasons for rejecting evidence, whether claimant testimony or medical

26  opinion"; and (3) assuming "the improperly discredited evidence were credited as true,

27  _____

28  2010.  AR at 34.

15

the ALJ would be required to find the claimant disabled on remand." <u>Garrison</u>, 759 F.3d at 1020 (citations and footnote omitted).

**B.   Analysis**

Remand for further proceedings is appropriate, for at least two reasons.  First, Plaintiff specifically "seeks a remand" for "better consideration of the psychological evidence."  JS at 6.  Second, even assuming Dr. Curtis's opinion were credited as true, the ALJ would not necessarily be required to find Plaintiff disabled on remand.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1020.  Dr. Curtis's report is from January 2008, and concluded that Plaintiff could not work "at this time."  AR at 409.  Thus, Dr. Curtis's conclusion does not necessarily extend to the present day.  If, however, the ALJ rejects Dr. Curtis's findings, she must provide specific and legitimate reasons for doing so.

## IX.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 14, 2014

HON. KENLY KIYA KATO
United States Magistrate Judge

16